## No. 11,127.

### ATCHISON, TOPEKA AND SANTA FE RAILWAY CO. *v.* PUBLIC UTILITIES COMMISSION.

#### Decided March 2, 1925.

On application to the Public Utilities Commission for a certificate of public convenience and necessity for the operation of a motor truck line.   Certificate granted.

### *Order Affirmed.*

1.   STATUTES—*Construction—Maxim.*   The maxim, expressio unius est exclusio alterius, held applicable to section 1272, C. L. '21, concerning vehicular traffic on public highways.

2.   PUBLIC UTILITIES—*Truck Lines—Jurisdiction of Commission.*   Sections 2946 (c), and 1272 (a), C. L. '21, construed, and held that the Public Utilities Commission has jurisdiction to grant a certificate of public convenience and necessity for a motor truck carrier without the consent of the officials of the county through which the line is to operate, where it appears that the trucks to be used do not come within the class specified in section 1272 (a).

*Writ of review to the Public Utilities Commission.*

Mr. ERL H. ELLIS, for petitioner.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. R. R. CLOUD, Assistant, Mr. FRANK J. MANNIX, for respondent.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS case arises out of the application of the Camel Truck Company, a motor truck common carrier, for a certificate of public convenience and necessity from the Public Utilities Commission of Colorado for the operation of its line for the carrying of freight and express between Pueblo and Rocky Ford through the counties of Pueblo and Otero.

The certificate was granted by the Commission subject to terms, for the route between Pueblo and Rocky Ford, and denied for the operation of the line between Rocky Ford and Holly. The Railway Company brings error, but states in the brief of its counsel that it "is accepting the decision of the Public Utilities Commission on the merits of the case, if the Commission had jurisdiction or right to grant the certificate without the consent and over the objection of the county commissioners of the two counties involved." An agreed record was filed limiting the review solely to the one purpose: To have determined the proper construction of that part of section 35 (c) of the Public Utilities Act, section 2946 (c), C. L. 1921, which reads as follows: "Every applicant for a certificate shall file in the office of the commission such evidence as shall be required by the commission to show that such applicant has received the required consent, franchise, permit, ordinance, vote or other authority of the proper county, city and county, municipal or other public authority."

The question here is, what is meant by the words, the "required consent" of "the proper county." To determine this, we look to another section, C. L. § 1272 (a), which reads: "No vehicle bearing a load exceeding 8 tons on four wheels shall be propelled on any part of a public highway except by written permission of the board of commissioners of the county as to county highways, or the state highway department, as to state highways."

The above section defines precisely when and what con-

sent of the counties is required, that is, for the propelling of a vehicle bearing a load exceeding eight tons on four wheels. It excludes the intention of any consent being required for a vehicle of any other description. Expressio unius est exclusio alterius. No claim is made in this case, and there is nothing in the record to show that the Truck Line Company intends to propel a vehicle of the class for which the consent of the counties is required, nor that it is its purpose to do so either with or without the consent of the counties. The "required" consent manifestly means "required by law." The requirements of the law are defined in the last section quoted.

The first statute above cited was passed in 1917. L. 1917, p. 420, sec. 35 (c). The other in 1921. L. 1921, p. 397, sec. 5 (a). They must be construed together. No other section of our statutes alters our conclusions as to the effect of the above.

Many citations from our statutes and the decisions of other states concerning towns and cities appear in the briefs. They have no place here. No rights or claims of any kind of any city or town are being litigated here. The Truck Line Company in its petition to the commission for a certificate of public convenience and necessity says: "That none of said cities or towns have any rule, law or ordinance that prohibits or limits the conduct through or within their limits of the transportation business proposed by the applicant; and that there is no requirement on the part of the applicant in the laws or ordinances of any of said towns or cities for applicant to obtain any consent for the operation of said motor transportation system."

The record shows no denial of the above allegation. The limitations of this inquiry to the subject of counties alone is further emphasized by the quotation above from the petitioner's brief. We shall not extend this opinion beyond the record.

Holding as we do that the Public Utilities Commission had jurisdiction and right to grant a certificate of public convenience and necessity as it did to the Truck Line Com-

pany, we do not regard it necessary to consider the other points raised.

The order of the Commission is affirmed.

MR. JUSTICE CAMPBELL, MR. JUSTICE WHITFORD and MR. JUSTICE SHEAFOR, dissent.

MR. JUSTICE CAMPBELL dissenting:

When the following opinion was prepared it was on the supposition, as its form shows, that it expressed the views of the majority of the Court. It now appears that their views are represented by the foregoing opinion of Mr. Justice Adams. I am instructed to say that Mr. Justice Whitford and Mr. Justice Sheafor join me in this dissent, and as the following opinion embodies our views, it is filed, without any material change, as the dissenting opinion.

Proceeding under section 17, of the amendment of 1917, to our Public Utility Act, section 2946, C. L. 1921, the Camel Truck Line Company, a Colorado corporation, applied to and received from the Public Utilities Commission a certificate of public convenience and necessity for the operation by it for hire and for its own gain a motor truck freight and passenger transportation system, not for the entire desired route from Pueblo to Holly, Colorado, but for that part thereof lying in Pueblo and Otero counties. The plaintiff in error, one of several protestants in the proceeding below and one of the objectors to the Commission's order granting the certificate, sued out this writ of error to review the same. The franchise or right of a corporate public utility, which the applicant here is, to engage in a business in this state affected by a public interest is not derived from the utility act but from the general corporation statute. The right of the public utility, however, to exercise such franchise or to enter upon the business is conditioned upon its obtaining a grant from the Utilities Commission of a certificate of public convenience and necessity. To obtain such certificate the public utility must

make a formal application to the Commission and make the showing provided for by the act.

The question for decision here is: Whether such applicant must, among other things, show the consent of the board of county commissioners of the counties over whose county highways the line of travel extends as a condition precedent to the issuance of the certificate? This depends upon the meaning and effect of clause "c" of the above mentioned section, reading: "Before any certificate may issue under this section, a certified copy of its articles of incorporation or charter, if the applicant be a corporation, shall be filed in the office of the commission. Every applicant for a certificate shall file in the office of the commission such evidence as shall be required by the commission to show that such applicant has received the required consent, franchise, permit, ordinance, vote or other authority of the proper county, city and county, municipal or other public authority."

It is only fair to state that in a previous similar application the Utilities Commission had issued a certificate without consent of the appropriate local public authority. In its written opinion accompanying its order granting the certificate in this proceeding the Commission said that as there was some doubt on the point it would adhere to its former opinion in an application previously disposed of until such time as the courts of the state decide otherwise.

In this state county highways are those maintained and kept in repair by the respective counties. C. L. 1921, sections 1244, 1390. The route of the proposed truck line runs through Pueblo and Otero counties. The consent of neither board was obtained, but, on the contrary, both boards objected to this application and the permissive order. Our Public Utility Act nowhere purports to vest in the Utilities Commission control or management of county highways, or power to determine the use, or manner of the use, thereof. The defendants in error do not contend that the power of the Commission to issue a certificate for the operation of transportation systems over the same carries

with it the power to control highways. In *Oro Electric Corporation v. Railroad Commission,* 169 Cal. 466, 147 Pac. 118, is a well considered opinion construing certain parts of the Public Utility Act of California substantially the same as the provision of our Act. The California Supreme Court there said: (page 475), "The granting or withholding of the certificate (the certificate of public convenience and necessity) is an exercise of the power of the state to determine whether the rights and interests of the general public will be advanced by the prosecution of the enterprise, which it is proposed to carry on for the service of the public. * * * This is an entirely different question from that of the local control of the streets, and power over the two subjects may well be vested at the same time in different governmental bodies, without the one in any way clashing with or interfering with the other. The railroad commission might grant a certificate authorizing a public utility to engage in its business in a given city, but the certificate would not authorize the use of the streets, unless the right to so use them had been given by the authority vested with the power to grant such right. This is recognized by subdivision (c) of section 50 itself (this is substantially the same as our section [c] above quoted), where we find an express provision that the applicant shall furnish to the commission evidence that the required local consent, franchise or permit has been obtained. * * * The city's powers are fully preserved if its streets are not occupied except by its consent, given as may be provided by law."

So we say here, that as our General Assembly has expressly said that a certificate may not issue until the applicant therefor has received the required consent of the appropriate public authority, this operates as a limitation upon the power of the Utilities Commission to issue a certificate; and the language of the section necessarily carries a grant by the General Assembly to the appropriate public authority the power to give or withhold the required consent. But the Attorney General, representing the Public

Utilities Commission, says that such might be the proper construction were it not that "required" consent in the statute means that consent of the proper public authority is necessary only when some other statute has expressly enacted that such consent is required and confers the power to give or withhold it.

It may be that we have no other statute which expressly empowers the board of county commissioners to give or withhold its consent to the issuing by the Public Utilities Commission of a certificate, but the conclusion which the Attorney General reaches from the absence of such a statute is not sound. We must presume that the General Assembly had some object in enacting clause (c). Its members knew that there are in this state special charter cities, and cities and towns organized under the general laws, and that there are other bodies or boards to which various governmental powers are granted and upon which duties are imposed. They also knew when this clause was enacted and later preserved in the amended act that truck line companies or common carriers were applying for permission to engage in business. They knew that some public highways in the state are under control of the state itself through its Highway Commission, some county highways are laid out, controlled, maintained and kept in repair by counties, and still others by towns and cities. It is no stretch of imagination to suppose that these local bodies, entrusted as they are with the control and maintenance and care of the public highways within their respective territorial limits, would be likely to know better than a body or commission at the State Capitol, as to the condition and fitness of their roads as well as to the wisdom and advantages or disadvantages of subjecting them to the added burden of an extraordinary or unusual use by common carriers for hire. The cost of maintenance of county highways is on the respective counties and county commissioners are responsible for their care. It is clearly apparent that the General Assembly, with full knowledge of such conditions, was not willing to delegate to the Utilities

Commission unrestricted power to grant to a public utility the right to use public highways; and so it said in clause (c) that in all cases before the certificate, which would authorize such use, may issue, the applicant therefor must show by sufficient evidence the consent of the public governmental body that has the power or authority to give such consent. That the state has plenary legislative power over public highways is conceded. Unless it has delegated the same or some part thereof, it remains in the state. Such power may be delegated expressly or by necessary implication. Although if we were driven to it, as the only escape from the contention of the Attorney General, we might in such a case as this hold that "required" as used to qualify consent, means proper or appropriate with reference to the public body having control of the particular highway over which the proposed line of travel extends; that is, the required or appropriate consent where the route is over a county highway must be given by a board of county commissioners. There is a better and stronger reason than this for reaching the same conclusion. Accepting, therefore, the definition of the Attorney General of "required" as "necessary", there is no difficulty in saving this clause and making it effective to carry out the legislative intent. When the General Assembly declared as its public policy that no certificate shall be issued until a required consent is given by a public body or authority, this declaration necessarily implies that the designated public authority shall have and has the power and right to give or withhold consent. We must not attribute to the General Assembly, unless its language compels it, a senseless enactment. In another statute our General Assembly has said that certain use of streets in a city should not be permitted without the consent of the governing municipal authority. There is no other statute or enactment expressly conferring upon municipalities the right to give or withhold consent, yet such provisions have without question been generally understood as authorizing municipal authorities to give or withhold consent in such a case, and

no such interference with the streets was deemed by anyone to be lawful unless the municipal consent was given. So here, the making imperative and mandatory obtaining of consent by a designated public body before a certificate may issue, by necessary implication confers the correlative power and authority of that body to give or withhold the "required" consent. It is difficult to perceive why the General Assembly would require an applicant for a certificate to obtain as a condition precedent to its issue the consent of a designated authority unless, in connection therewith, it intended to, and did, confer upon that authority the power and right to give the consent.

Our statute, let it be repeated, expressly provides that before a certificate of public convenience and necessity may issue, the applicant therefor shall file in the office of the Utilities Commission sufficient evidence that he or it has received the required consent or authority from the proper public body. To hold, as the majority opinion does, that because the applicant is unable to furnish such evidence either on the ground that the proper public body has refused the consent, or upon the ground that the General Assembly has not expressly delegated thereto power to give or withhold consent in such cases, is an anomalous doctrine to establish. When a statutory privilege is conferred, upon a prescribed condition, and is withheld unless the condition is complied with, it would seem necessarily to follow that the privilege may not be enjoyed if the condition is not or cannot be met. Here, however, the majority opinion permits an applicant for the privilege to enter upon its enjoyment even though the prescribed condition upon which enjoyment depends has not been, and cannot be, complied with. It is unusual to award to an applicant the present enjoyment of a privilege upon which the statute says he may enter only after a prescribed condition has been performed, when confessedly he is unable to perform it.

We think the order of the Commission should be set aside.